UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

COLIN A. SMITH,

                          Plaintiff,

                                                                        **DECISION AND ORDER**
                                                                        09-CV-1072A

          v.


MICHAEL J. ASTRUE, Commissioner
  of Social Security,

                          Defendant.

_____


## INTRODUCTION

This case comes before the Court on cross-motions for judgment on the

pleadings (Dkt. Nos. 6, 8) that the parties have filed pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure ("FRCP").  Plaintiff Colin A. Smith commenced

this action on December 17, 2009, pursuant to 42 U.S.C. § 405(g).  Through this

action, Plaintiff challenges the final determination of the Commissioner of Social

Security ("Commissioner") denying his claim for Supplemental Security Income

("SSI") benefits under the Social Security Act.  The Commissioner responds that

substantial evidence supports the denial of Plaintiff's claim.

As a procedural note, the Court had referred this case to Magistrate Judge

H. Kenneth Schroeder, Jr.  Magistrate Judge Schroeder held oral argument on

the pending cross-motions on July 27, 2010.  After reviewing the motion papers

and the transcript of the oral argument, this Court has decided that it can resolve

the pending motions without the need for a report and recommendation under

FRCP 72.  For the reasons below, the Court grants the Commissioner's motion

and denies Plaintiff's motion.

## BACKGROUND

On May 18, 2005, Plaintiff applied for SSI benefits alleging disability

beginning January 1, 2003, due to diabetes, cardiomyopathy with hypertension,

status-post bilateral gunshot wounds, and status-post hip surgery.  At the time of

his application, Plaintiff was 28 years old, weighed 273 pounds, and was

educated through the eleventh grade.  (Tr. 47; 54).  Plaintiff also indicated that he

held full-time employment until the onset date of his disability in 2003, and after

Plaintiff's SSI benefits were denied in September 2005, Plaintiff worked for

another year performing various temporary physical labor jobs in grocery and

factory production settings.  (Tr. 57-64).  On his application for SSI benefits,

Plaintiff claimed an inability to stand for long periods of time, lift heavy objects, or

work in cold temperatures, due to pain and other symptoms secondary to

diabetes, hip injury, complications from gunshot wounds, and prior heart attack.

(Tr. 47-48).

On January 23, 2002, Erie County Medical Center ("ECMC") admitted

Plaintiff with complaints of chest pain and diagnosed him with heart failure,

diabetes, and mild to moderate left ventricular dysfunction.   (Tr. 92-94; 100).  On

April 12, 2005, Buffalo General Hospital Emergency Room admitted Plaintiff for a draining gunshot wound; Plaintiff was shot in both legs in 2001, but had complications in his left leg four years later after "roughhousing with his daughter."  (Tr. 134-143).  Plaintiff revisited Buffalo General Hospital on May 4, 2005, and was prescribed Lortab to ease the residual pain from this injury.  (Tr. 162).

On August 4, 2005, Dr. John Schwab conducted an internal medical examination of Plaintiff upon his filing for SSI benefits and diagnosed Plaintiff with diabetes mellitus, hypertension, and obesity.  (Tr. 167).  Two years later, on April 12, 2007, Plaintiff saw his primary care physician, Dr. Zahrain Hall, to treat complications from diabetes, stress, and pain in his knees and legs.  Plaintiff returned to Dr. Hall a month later complaining of continued pain and seeking completion of a form for employability.  Plaintiff felt he was unable to work because of pain in his knees and hip that gave him difficulty sitting and standing for a prolonged period of time.  (Tr. 203; 205).  Dr. Hall completed the form but concluded that Plaintiff should only temporarily stop working for three months.  Dr. Hall opined that after three months of taking prescribed medication, attending physical therapy, dieting, and completing a sleep study to aid Plaintiff's anxiety and exhaustion, Plaintiff would be able to complete "a job training program if he feels unable to do construction" and thus, eventually work again.  (Tr. 205; 208-209).

Plaintiff's claim for SSI benefits was disapproved on September 14, 2005. (Tr. 32-35).  On January 11, 2006, Plaintiff filed a Disability Report-Appeal in which he claimed that his pain had worsened thereby exacerbating his inability to move and perform daily activities.  (Tr. 77-83).  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") on January 19, 2006, and subsequently obtained legal representation on June 6, 2008.  A video hearing took place on August 7, 2008, before ALJ Maryellen Weinberg, at which only Plaintiff testified.  (Tr. 23; 31; 36-39; 271-306).

In a written decision dated September 4, 2008, the ALJ denied benefits to Plaintiff.  According to the ALJ, Plaintiff in fact suffers from diabetes and residual impairments from hip surgery, gunshot wounds, and congestive heart failure. Nonetheless, the ALJ determined that Plaintiff's subjective complaints regarding pain and functional limitations were not entirely credible because they do not correspond to a collective reading of Plaintiff's medical records. (Tr. 17-22). Moreover, the ALJ found Plaintiff not entirely credible because he inconsistently took his diabetes medication, failed to regularly check his blood sugar level, continued to smoke, and did not diet as much as the doctor prescribed; the ALJ concluded that if Plaintiff's pain were as severe as claimed then he would take these prescribed steps to better himself.  (Tr. 19-21).  The  ALJ ultimately determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with the additional limitation that Plaintiff should not work in

environments with a high concentration of dust, fumes and/or other pulmonary

irritants because of his congestive heart failure.  (Tr. 18-19).

Plaintiff appealed the ALJ's denial of benefits to the Social Security

Appeals Council.  In a written notice dated November 4, 2009, the Appeals

Council upheld the ALJ's decision.  The Appeals Council's notice thus became

the final decision of the Commissioner.  Plaintiff then filed this action on

December 17, 2009, challenging the ALJ's determination.

## DISCUSSION

### Jurisdiction and Scope of Review

District courts have jurisdiction to hear claims based on the denial of Social

Security benefits, but may only set aside the Commissioner's decision if it is

based upon a legal error or if the findings of fact are not supported by substantial

evidence.  *See* 42 U.S.C. § 405(g).  Evidence is substantial if it is "more than a

mere scintilla," and if it is that which "a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401

(1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Social Security Act sets out a five-step evaluation in order to determine

whether one is disabled as it is defined in 20 C.F.R § 404.1504; that is, whether

one lacks the ability "to do any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months." 20 C.F.R § 404.1504.

The first step in the evaluation is to consider whether Plaintiff is presently

engaged in substantial gainful activity. 20 C.F.R §§ 404.1520(a)(4)(i);

416.920(a). If not, the Commissioner must then assess the severity of Plaintiff's

impairment; in order to claim disability, one must have a severe impairment that

"significantly limits [Plaintiff's] physical or mental ability to do basic work

activities." 20 C.F.R. §§ 404.1520(a)(4)(ii),(c); 416.920(c). If Plaintiff suffers from

such an impairment, the Commissioner must next consider the medical severity

of his impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(d). If Plaintiff has an

impairment that is equivalent to one listed in 20 C.F.R Part 404, Subpart P,

Appendix 1 and the impairment continues for a period of not less than 12 months,

the Commissioner will find that Plaintiff is disabled. 42 U.S.C. § 423(d)(1)(A).

However, if Plaintiff does not have an impairment listed in Appendix 1, the

Commissioner must determine Plaintiff's RFC. 20 C.F.R. 416.920(e).

At the fourth step of the inquiry, the Commissioner must consider the

assessment of Plaintiff's RFC and to consider Plaintiff's past relevant work. 20

C.F.R §§ 404.1520(a)(4)(iv); 416.920(f). If he cannot perform his past work but is

capable of making an adjustment to perform other work, the Commissioner will

assess Plaintiff's RFC along with the his age, education, and past work

experience to determine whether Plaintiff can make an adjustment to perform

other work which exists and is prevalent in the national economy.  20 C.F.R. §§

404.1520(a)(4)(v); 416.920(g).  Plaintiff bears the burden to prove the first four

steps and the Commissioner bears the burden to prove the fifth step. *See Schaal*

*v. Apfel,* 134 F.3d 469, 501 (2d Cir. 1998); *Perez v. Chater*, 77 F.3d 41, 46 (2d

Cir. 1996); 20 C.F.R §§. 416.912(g).

In the present case, the ALJ first found that Plaintiff had not engaged in any

substantial gainful activity since he filed his application on May 18, 2005, and

secondly, that Plaintiff suffered from diabetes mellitus, cardiomyopathy with

hypertension, status-post bilateral gunshot wounds, status-post hip surgery, and

obesity.  (Tr. 17).  However, pursuant to the third step of the inquiry, the ALJ

found that none of these impairments, alone or combined, met or medically

equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix

1. (Tr. 18).

The ALJ next found that given Plaintiff's age, 11th-grade education, and

lack of medical records to support his testimony of excessive pain and inability to

perform many daily activities, Plaintiff had the RFC to perform sedentary work

that exists in the national economy.  (Tr. 18-21).  Sedentary work is defined by 20

C.F.R 416.967(a) as work that mainly involves sitting, although some occasional

amount of walking, standing, and lifting small, light objects is often necessary to

carry out job duties.  The ALJ also found that Plaintiff should perform sedentary

work in environments without "concentrated exposure to dust, fumes, and other

pulmonary irritants" due to Plaintiff's congestive heart failure.  (Tr. 18).  Although

the ALJ noted that Plaintiff has no relevant past work experience because he can

no longer perform physical labor due to his impairments, she determined that

Plaintiff could receive vocational training for a new line of work as per the

recommendation of Dr. Hall on Plaintiff's employability form.

### Medical Evidence Supports the ALJ's Residual Functional Capacity Assessment

In order to determine Plaintiff's RFC, the ALJ must assess and consider all

medically determinable impairments based on "all of the relevant medical and

other evidence" as well as [Plaintiff's] "ability to meet the physical, mental,

sensory, and other requirements of work."  20 C.F.R § 404.1545(a)(1-4).  In the

present case, the ALJ found that Plaintiff does not have a severe impairment

"which significantly limits [his] physical or mental ability to do basic work."  20

C.F.R § 404.1520(c).  Rather, in spite of Plaintiff's injuries from diabetes, gunshot

wounds, hip surgery, and congestive heart failure, the ALJ determined that

Plaintiff's medical records prove his ability to receive training for and perform

sedentary work.

Plaintiff provided medical records from his primary care physician, Dr. Hall,

and from two internal medicine examiners, Dr. Schwab and Dr. Kelley, to whom

the Division of Disability Determination referred Plaintiff upon his applying for SSI

benefits. (Tr. 164-167; Tr. 180-184).  On April 12, 2007, Dr. Hall reported that

Plaintiff had congestive heart failure for which he was hospitalized in 2001.  Dr. Hall further diagnosed Plaintiff with obesity, non-insulin dependant diabetes, and knee pain.  (Tr. 197).  Two months later Plaintiff returned to Dr. Hall after having been incarcerated for one month where he had no access to medication for his diabetes.  (Tr. 203-205). At this visit, Plaintiff asked for diabetes medication and completion of a form for employability because he felt unable to work due to knee and hip pain that impeded his ability to sit, stand, or perform any gainful employment (Tr. 205; 208).  Dr. Hall subsequently filled out the form which stated that Plaintiff's Estimated Functional Limitations were such that he could be excused from work for three months.  Dr. Hall opined that after three months of proper medication, weight loss, and physical therapy, Plaintiff would be capable of going through job training for a new line of work if he still feels unable to perform his prior work in construction.  (Tr. 208).

Moreover, internal consultative medical examiner, Dr. Schwab, examined Plaintiff on August 4, 2005.  He concluded that Plaintiff was only restricted from those activities requiring "fine visual activity," but noted that Plaintiff's vision would likely be corrected with proper treatment of his diabetes.  (Tr. 167).  No other medical impairments were diagnosed at that time.  Two years later, Dr. Kathleen Kelley examined Plaintiff.  (Tr. 184).  In her report, Dr. Kelley opined that Plaintiff's diabetes led to some neuropathy in Plaintiff's feet and that Plaintiff should thus refrain from working in environments with extreme temperatures as

well as environments with concentrated smoke and respiratory irritants because

of his congestive heart failure.  (Tr. 184).  Lastly, Dr. Kelley noted that she saw no

further "obvious limitations" and that any other limitations would be "psyche-

related." (Tr. 184).

Plaintiff argues that the ALJ made her ultimate decision based upon her

own opinion rather than from the doctors' medical opinions taken from Plaintiff's

medical records.  However, no medical report stated Plaintiff's inability to work

other than the form of employability Dr. Hall filled out stating that Plaintiff could

not work for a three month period which does not satisfy the minimum durational

requirement of inability to work for not less than 12 months.  20 C.F.R §

404.1504; (Tr. 206-209).  Furthermore, Dr. Hall's opinion that Plaintiff would be

able to receive subsequent new job training greatly supports the ALJ's conclusion

that Plaintiff furthermore has the capability to use that job training in order to

perfom some sort of work.  Thus, the ALJ's determination that Plaintiff is not

disabled and can perform sedentary work is supported by substantial evidence

and was not made in legal error.

### Failure to Obtain Testimony of a Vocational Expert

Plaintiff argues that the ALJ erred in failing to obtain testimony from a

vocational expert.  An ALJ must only seek testimony of a vocational expert when

Plaintiff's non-exertional limitations "significantly limit the range of work permitted

by [Plaintiff's] exertional limitations" such that it causes "additional loss of work

capacity beyond a negligible one or ... one that narrows [his] possible range of work as to deprive him of a meaningful employment opportunity." *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010); *(quoting Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986)).  When non-exertional limitations do not cause such additional loss of work capacity, the ALJ is permitted to assess Plaintiff's RFC using the Medical-Vocational Guidelines set forth in the Social Security Regulations.  20 C.F.R. Part 404, Subpart P, App. 2.  Therefore, testimony of a vocational expert is only necessary when Plaintiff has a non-exertional limitation that significantly worsens his exertional limitation such that it would subsequently render an inaccurate reading of the Medical-Vocational Guidelines.  Id.

Plaintiff claims that the ALJ erred in not seeking testimony of a vocational expert because the ALJ failed to take into account Plaintiff's non-exertional limitations of limited mobility and inability to work in environments with high concentrations of dust and pulmonary irritants.  Plaintiff incorrectly categorizes difficulty sitting, standing, and walking as non-exertional limitations.[1]  However, Plaintiff does have an environmental non-exertional limitation due to his congestive heart failure.  The ALJ determined that Plaintiff should not work in "environments with concentrated exposure to dust, fumes, and/or other

---

[1]Social Security Regulation SSR 96-9p defines "exertional limitations [as] an *impairment-caused* limitation to" sit, stand, walk, lift, carry, push, pull. SSR 96-9p defines non-exertional limitations as "an *impairment-caused* limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling. Environmental restrictions are also considered non-exertional.

pulmonary irritants" but as per the Social Security Regulation SSR 83-14, the impact of "the broad world of work would be minimal because most job environments do not involve great ... amounts of dust."  (Tr. 18); Social SSR 83-14.

In the present case, Plaintiff's exertional limitations secondary to his diabetes, status-post hip surgery, status-post bilateral gunshot wounds, and obesity are not significantly altered or exacerbated by Plaintiff's environmental non-exertional limitation because this environmental limitation does not eliminate a significant number of Plaintiff's potential employment opportunities.[2]   SSR 83-14.   Therefore, the ALJ's RFC determination was not made in error when she used the Medical-Vocational Guidelines to determine that Plaintiff could perform sedentary work because her decision to use the Guidelines was supported by substantial evidence in Plaintiff's medical records and was supported by the Social Security Regulations.  20 C.F.R. Part 404, Subpart P, App. 2.

## ALJ's Credibility Assessment

The ALJ determined that Plaintiff's subjective testimonies of pain and daily activities were not entirely credible because they do not corroborate with medical evidence and because Plaintiff failed to routinely follow prescribed medical advice

---

[2]Plaintiff fails to show any other non-exertional limitations.  As discussed below, the ALJ found that Plaintiff's subjective complaints of pain not credible because they were not supported by the medical evidence from the three doctors that examined him.  Therefore, Plaintiff's subjective complaints do not establish additional non-exertional limitations.

to help decrease his pain.  Furthermore, Plaintiff also gave conflicting testimonies as to his daily activities.

The Court shows "special deference" to the credibility determination made by the ALJ who observed Plaintiff testify at the hearing before her.  *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d. Cir. 1994).  Although Plaintiff's subjective complaints must be considered, symptoms alone cannot establish that an impairment is severe without a medically determinable impairment in Plaintiff's medical records that could reasonably be expected to produce the symptoms. *Gallagher v. Schweiker*, 697 F.2d 82, 85 (2d Cir. 1983); SSR 96-3p.  Moreover, it is proper for an ALJ to make a credibility determination based on whether Plaintiff's testimony is consistent with medical records and whether Plaintiff follows medical advice.  *See* SSR 96-7p.

Plaintiff claims that pain, fatigue, numbness, and tingling are problematic symptoms secondary to his gunshot wounds, diabetes, an old hip surgery, and congestive heart failure that collectively do not allow him to work.   The ALJ assessed these factors but noted that none of the examining doctors' reports stated that Plaintiff's injuries were severe enough to cause pain so significant as to disable him or that would reasonably be expected to produce symptoms of which Plaintiff complained.  (Tr. 18-22).  Therefore, the ALJ properly took Plaintiff's testimony into consideration and accounted for his pain, but ultimately

13

found Plaintiff's testimonies not entirely credible because the record lacked substantial evidence to corroborate them.

Plaintiff also failed to routinely follow prescribed medical treatment.  The ALJ noted from medical records and from Plaintiff's own testimony that Plaintiff inconsistently took diabetes medication and failed to regularly check his blood sugar in order to help control fatigue, numbness, and tingling.  Furthermore, the ALJ noted Plaintiff did not follow through with the prescribed sleep study to help his problem of fatigue, nor did he attend physical therapy as prescribed to help knee and hip pain.  Lastly, the ALJ determined that Plaintiff's decision to continue smoking despite his congestive heart failure suggests that his pain is likely not as severe as alleged and that Plaintiff would have stopped if it were.  The ALJ reasoned that Plaintiff's failure to follow all of Dr. Hall's prescribed advice suggests that Plaintiff's accounts of pain are not as severe as he claims, and thus, not entirely credible.  (Tr. 19-21)

Plaintiff also raised the concern that the ALJ did not rely on Plaintiff's accounts of his limited daily activities, but the Commissioner argued that Plaintiff's testimony conflicted as to the specifics of his daily activities.  At his hearing in front of the ALJ in August 2007, Plaintiff testified that he sometimes needs help bathing, rarely leaves the house because he can only walk "for a good ten minutes," only socializes when his mother or his nieces come to visit him, and has difficulty holding a writing implement.  (Tr. 285-287).  However,

14

some parts of this testimony substantially conflict with the description of daily activities that Plaintiff gave Dr. Kelley nine months later in May 2008.  Specifically, at that time, Plaintiff told Dr. Kelley that he had no problems bathing himself, often went outside and socialized with friends, and enjoyed drawing which requires holding a writing implement.  (Tr. 180-184).  The ALJ noted that these inconsistencies in Plaintiff's testimony were another basis for finding Plaintiff not entirely credible.

In light of the aforementioned factors, there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's subjective complaints of pain were not entirely credible.  Thus, the ALJ made no error of law by giving these subjectively testimonies less weight in assessing Plaintiff's RFC.

## **CONCLUSION**

For the reasons set forth above, the ALJ properly found that Plaintiff was not disabled.  The Court grants the Commissioner's motion for judgment on the pleadings (Dkt. No. 6) and denies Plaintiff's cross-motion for judgment on the pleadings (Dkt. No. 8).  The Clerk of the Court shall close this case.

SO ORDERED.


*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: July 12, 2011